**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Norfolk Division**

UNITED STATES OF AMERICA

Plaintiff,

v. Action No. 2:25cv583

APPROXIMATELY $11,850 IN U.S.
CURRENCY SEIZED BY CHESAPEAKE
POLICE ON MARCH 13, 2024,

Defendant *In Rem*.

**UNITED STATES MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

This matter is before the Court on the United States' motion for default judgment. ECF No. 9. The United States seeks default judgment against the defendant, $11,850.00 in United States Currency seized by Chesapeake Police on March 13, 2024 ("the defendant property"), alleging that the defendant property should be forfeited to the United States pursuant to 21 U.S.C. § 881(a)(6). *Id.* On May 5, 2026, this matter was referred to the undersigned for a report and recommendation pursuant to 28 U.S.C. § 636(b) and Federal Rule of Civil Procedure 72(b). ECF No. 10.

For the reasons stated herein, the Court **RECOMMENDS** that the United States' motion for default judgment, ECF No. 9, be **GRANTED**.

## I. PROCEDURAL HISTORY

The United States filed a complaint *in rem* on September 16, 2025, seeking the forfeiture of all right, title, and interest in the defendant property, as well as in approximately $51,920.00 in United States currency seized by the Chesapeake Police Department ("CPD") between February

10 and 11, 2024; a 9mm Taurus Pistol 709 slim and all accompanying magazines and ammunition seized by CPD on February 10, 2024; and a .45 caliber HS Produkt pistol and all accompanying magazines and ammunition seized by CPD on February 10, 2024. ECF No. 1, at 1–2.

The United States amended its complaint on October 8, 2025 to seek the forfeiture of only the defendant property. ECF No. 2, ¶ 3. The United States alleges that the defendant property constitutes the proceeds of violations of 21 U.S.C. § 841(a)(1)[1] and is, accordingly, subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). *Id.* ¶ 2. The clerk entered default on December 17, 2025 pursuant to Federal Rule of Civil Procedure 55(a). ECF No. 8. On the basis of this allegation and given that no person has claimed the defendant property following proper notice, the United States filed a motion for default judgment against the defendant property and requested that this Court enter an order of forfeiture. ECF No. 9, at 3.

## II. FACTUAL BACKGROUND[2]

On or about February 10, 2024, officers with the CPD intended to serve arrest warrants on Abdul-Wakeel Khabeer Qaabid ("Qaabid") for domestic assault and battery and destruction of property. ECF No. 2, ¶ 9. To serve the warrants on Qaabid, CPD surveilled Qaabid's residence in Chesapeake, Virginia. *Id.* ¶¶ 9–10. That evening, CPD officers observed Qaabid exit his residence and begin to drive away in a 2013 Honda sedan registered in his name. *Id.* ¶ 10. CPD officers initiated a traffic stop. *Id.*

[1] Title 21, United States Code, section 841(a)(1) makes it a crime to knowingly or intentionally "manufacture, distribute, or dispense, or possess with intent to manufacture, distribute, or dispense, a controlled substance." 21 U.S.C. § 841(a)(1).

[2] As no one has come forward to claim the defendant property, the well-pleaded allegations of facts set forth in the amended verified complaint, ECF No. 2, are deemed admitted. *See United States v. All Assets Listed in Attachment A*, No. 1:14cv969, 2015 WL 1401747, at *2 (E.D. Va. Mar. 25, 2015) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)).

Qaabid initially complied with the traffic stop. *Id.* ¶ 11. He stopped his car, provided officers with his driver's license, and confirmed his identity. *Id.* CPD officers told Qaabid they intended to serve him with a protective order and asked him to turn off the car and step out. *Id.* Qaabid turned off the car, but then turned the car on again and pulled away. *Id.* ¶ 12. Driving at excessive rates of speed, Qaabid struck and damaged three other vehicles. *Id.*

After colliding with the third car, Qaabid's airbag deployed. *Id.* He exited the vehicle and continued to flee on foot. *Id.* With the help of a certified canine, a CPD officer tracked Qaabid back to his residence. *Id.* ¶ 14. Meanwhile, CPD officers conducted an inventory of Qaabid's car. *Id.* ¶ 13. They found 2 pistols, $25,020.00 in United States currency, 5 ounces of cocaine base processed and packaged for sale, 43 grams of marijuana packaged for distribution, and 3 mobile phones. *Id.*

At Qaabid's residence, CPD established a perimeter, attempted to contact Qaabid, and obtained a search warrant. *Id.* ¶ 14. After midnight on February 11, 2025, CPD officers searched the residence. *Id.* ¶ 15. In the kitchen, they found cocaine and cocaine base, some of which was recently processed and some of which was packaged for sale, a firearm, baking soda, and a lease agreement bearing Qaabid's name. *Id.* In the primary bedroom, they found the following: (1) approximately 6 kilograms of cocaine; (2) $26,900.00 in United States currency; and (3) a suitcase "bearing a tag with Qaabid's name, phone number, and flight information for a recent trip abroad." *Id.* In the living room, they found drug packaging materials. *Id.* ¶ 16. The Drug Enforcement Agency laboratory confirmed that the substances seized from Qaabid's car and house were, in total, 6,188 grams of cocaine and 425 grams of cocaine base. *Id.*

CPD located Qaabid on March 13, 2024, in Chesapeake, Virginia, with his girlfriend at her residence. *Id.* ¶ 18. CPD officers arrested Qaabid and obtained a search warrant for his girlfriend's

residence. *Id.* ¶¶ 18–19. The search yielded the defendant property, along with cocaine base, drug cutting agents, a sifter, four mobile phones, and a digital scale. *Id.* ¶ 19. CPD officers found three of the phones on a couch in the living room next to unopened mail addressed to Qaabid. *Id.* In one bedroom of the residence, the items located included men's clothing, Qaabid's 2021 tax documents, and vehicle and bank documents bearing Qaabid's name. *Id.* Qaabid's girlfriend advised that a safe in that same bedroom, wherein the defendant property was eventually located, was not hers. *Id.* ¶¶ 19–20. She also advised that the clothing in the bedroom belonged to Qaabid. *Id.* ¶ 20.

On September 24, 2024, Qaabid pled guilty in United States District Court for the Eastern District of Virginia to possessing with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A), and possessing, using, and carrying firearms in furtherance of and in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A). *Id.* ¶ 22; *United States v. Qaabid*, No 2:24cr68, ECF Nos. 30, 34.

In his plea agreement, Qaabid agreed to forfeit the defendant property. *United States v. Qaabid*, No 2:24cr68, ECF No. 34, ¶ 11. In the statement of facts filed in support of Qaabid's plea, he stipulated to the circumstances under which the defendant property was found and that the defendant property constituted drug proceeds. *United States v. Qaabid*, No. 2:24cr68, ECF No. 31, ¶ 8. Although the docket in Qaabid's criminal case, 2:24cr68, reflects that a consent order of forfeiture was entered on September 25, 2024, the document cannot be accessed through PACER and it appears the document cannot be located. *United States v. Qaabid*, No. 2:24cr68 (noting "Consent Order Directing Forfeiture of Property" on September 25, 2024); ECF No. 2, ¶ 22. The defendant property is currently in the possession of the Bureau of Alcohol, Tobacco, Firearms, and Explosives in Norfolk, Virginia. ECF No. 2, ¶ 5.

## III. JURISDICTION

### A. Subject Matter Jurisdiction

Pursuant to 28 U.S.C. § 1345, district courts have original jurisdiction over all civil actions, suits, and proceedings commenced by the United States. 28 U.S.C. § 1345. Pursuant to 28 U.S.C. § 1355(a), district courts also have original jurisdiction over *in rem* civil forfeiture actions brought under any federal statute. *Id.* § 1355(a). Here, the United States has commenced proceedings and the matter is one of *in rem* civil forfeiture. ECF No. 2, ¶ 1. Accordingly, subject matter jurisdiction is proper.

### B. Venue, *In Rem* Jurisdiction, and Service of Process

Pursuant to 28 U.S.C. §§ 1355(b)(1) and 1395(b), venue and *in rem* jurisdiction are proper within a district wherein the acts giving rise to the forfeiture occurred or within the district wherein the *res* is located. 28 U.S.C. §§ 1355(b)(1), 1395(b).[3] Qaabid's arrest and the seizure of the defendant property took place in the Eastern District of Virginia. ECF No. 2, ¶¶ 18–19. Moreover, the defendant property is located in the Eastern District of Virginia. *Id.* ¶ 5. Accordingly, venue and *in rem* jurisdiction are proper in this district.

[3] In *United States v. Batato*, the Fourth Circuit held that 28 U.S.C. § 1355(b)(1)(B) conferred *in rem* jurisdiction, but left unanswered the question of whether the statute also conferred venue. *United States v. Batato*, 833 F.3d 413, 419–20 (4th Cir. 2016). Since then, other district courts in the Fourth Circuit have ruled that section 1355(b)(1)(B) confers venue and *in rem* jurisdiction. *United States v. $121,675.00 in U.S. Currency*, 725 F. Supp. 3d 521, 525–27 (E.D.N.C. 2024) (interpreting *Batato* to hold that section 1355(b)(1)(B) confers *in rem* jurisdiction and venue); *United States v. $8,500.00 in United States Currency*, No. 1:08cv1103, 2009 WL 1252379, *1 (E.D. Va. May 5, 2009) (holding that section 1355(b) confers *in rem* jurisdiction and venue); *United States v. 330,000.026094 USDT Tokens Seized from the Cryptocurrency Wallet Address Identified by 0X9AFC36B20C961CD34450AE0C3941C302BFD6B1F1*, No. 1:25cv555, 2025 WL 4648137, at *3 (E.D. Va. Dec. 23, 2025) (same). The Court finds this interpretation persuasive.

Rule G of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Rule G") governs *in rem* forfeiture actions arising from a federal statute. Suppl. R. Admiralty or Mar. Claims & Asset Forfeiture G (1) (hereinafter "R. G"). For *in rem* actions where the defendant is not real property, the following are among acceptable actions: (1) "the clerk must issue a warrant to arrest the property if it is in the government's possession, custody, or control"; or (2) "the court, on finding probable cause, must issue a warrant to arrest the property if it is not in the government's possession, custody, or control and is not subject to a judicial restraining order." R. G(3)(b).

The warrant "must be delivered to a person or organization authorized to execute it," such as the United States Marshal, any other United States officer or employee, a person under contract with the United States, or a person specially appointed by the court for that purpose. R. G(3)(c).

The United States must publish notice of the action within a reasonable time after filing the complaint, with some exceptions. R. G(4)(a)(i). The notice must: (1) "describe the property with reasonable particularity"; (2) "state the times under Rule G(5) to file a claim and to answer"; and (3) "name the government attorney to be served with the claim and answer." R. G(4)(a)(ii). The published notice must appear either once a week for 3 consecutive weeks by newspaper, or "only once if notice of nonjudicial forfeiture of the same property was published on an official internet government forfeiture site for at least 30 consecutive days, or in a newspaper of general circulation for [3] consecutive weeks in a district where publication is authorized under Rule G(4)(a)(iv)." R. G(4)(a)(iii–iv).

The United States "must send notice of the action and a copy of the complaint to any person who reasonably appears to be a potential claimant on the facts known to the government before the end of the time for filing a claim under Rule G(5)(a)(ii)(B)." R. G(4)(b)(i). Notice must be

sent by means reasonably calculated to reach the potential claimant. R. G(4)(b)(iii)(A). Notice must also be sent to an incarcerated potential claimant in the place of his incarceration. R. G(4)(b)(iii)(C).

Here, the United States has complied with all the procedural and notice requirements necessary to bring a forfeiture *in rem* action against the defendant property. On October 22, 2025, the clerk issued a warrant to arrest the defendant property pursuant to Rule G(3)(b). ECF No. 4. On December 15, 2025, the warrant for arrest *in rem* was executed on the defendant property by the United States Marshals Service pursuant to Rule G(3)(b) and (c). ECF No. 5. Proof of service for the executed warrant for arrest *in rem* was filed with the Clerk of Court on December 16, 2025. *Id.* Notice of the action was published on an official United States internet site, namely, www.forfeiture.gov, for 30 days, beginning on October 10, 2025, pursuant to Rule G(4)(a). ECF No. 9, at 2; ECF No. 6-1. The publication described the defendant property with reasonable particularity, stated the time to file a claim and to answer, and named Assistant United States Attorney Kevin Hudson as the government attorney to be served with the claim and answer. ECF No. 6-1.

A notice of publication was filed with the Clerk of Court on December 16, 2025. ECF No. 6. Pursuant to Rule G(4)(b), direct notice of this action and a copy of the complaint were sent on October 8, 2025 to Future Harris[4] by certified and regular United States Mail and to Qaabid at the place of his incarceration. ECF No. 9, at 2.

The deadline for filing a claim for an individual to whom direct notice was sent expired on November 12, 2025. R. G(4)(b)(ii)(B), (5)(a); ECF No. 9, at 2. Further, the deadline for filing a

---

[4] The United States' motion for entry of default judgement stated that Future Harris was believed to have an interest in the defendant property. ECF No. 9, at 2.

claim for a claimant to whom direct notice was not sent expired on December 9, 2025. R. (5)(a)(ii)(B); ECF No. 6-1, at 2. No person has filed a verified claim as required by Rule G, nor has any person otherwise appeared or answered the amended complaint, and the time to do so has expired. Accordingly, *in rem* jurisdiction is proper and the notice requirements have been satisfied to bring the defendant property within the Court's jurisdiction.

## IV. STANDARD OF REVIEW

The purpose of proceedings *in rem* is to quiet the title of property involved in criminal activity. *United States v. Ursery*, 518 U.S. 267, 295–96 (1996) (Kennedy, J. concurring). These proceedings do "not require a showing that the owner who stands to lose his property interest has committed a criminal offense." *Id.* at 296. Accordingly, the analysis must focus on the defendant property in the case at hand, not the defendant from the predicate offense. *See United States v. One 2003 Mercedes Benz CL500*, No. PWG-11-3571, 2013 WL 5530325, at *2 (D. Md., Oct. 3, 2013) (finding the United States' argument deficient because it centered on the owner rather than the defendant property).

Rule 55 of the Federal Rules of Civil Procedure governs default judgment in the context of *in rem* forfeiture. *United States v. $860,000.00 in Funds Seized from Crypto.com Acct. Associated with User Id XXXXXXXX*, No. 1:24cv1756, 2025 WL 2788097, at *4 (E.D. Va. Sept. 9, 2025) (employing Rule 55 to determine default in the context of *in rem* forfeiture). Before entering default judgment, a court must evaluate the sufficiency of the allegations to determine if the complaint states a cause of action that supports the relief sought. *See Globalsantafe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003) ("Upon default, facts alleged in the complaint are deemed admitted and the appropriate inquiry is whether the facts as alleged state a claim."); *see Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) ("The court

must . . . determine whether the well-pleaded allegations in [the] complaint support the relief sought in this action.").

In civil forfeiture, default judgement is permitted where no potential claimant has filed a response to the complaint. *United States v. All Assets Listed in Attachment A*, No. 1:14cv969, 2015 WL 1401747, at *2 (E.D. Va. Mar. 25, 2015). Defendants *in rem* and potential claimants are deemed to have admitted all the United States' well-pled allegations of fact. *Id.* Conclusions of law, by contrast, are not deemed admitted. *Ryan*, 253 F.3d at 780 (quoting *Nishimatsu Constr. Co., Ltd. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)). Neither does default guarantee a plaintiff's right to recover. *Id.* (quoting *Nishimatsu Contr. Co., Ltd.*, 515 F.2d at 1206).

The complaint *in rem* is only sufficient to recover if it "state[s] sufficiently detailed facts to support a reasonable belief that the government will be able to meet its burden of proof at trial." R. G(2)(f). As such, the United States must allege facts that would support the reasonable belief that it will prove forfeitability by a preponderance of the evidence. *See One 2003 Mercedes Benz CL500*, 2013 WL 5530325, at *2 & n.4.

The question of whether the facts support forfeiture is determined in the following manner. According to section 881(a)(6), all proceeds traceable to an illicit drug transaction are subject to forfeiture. 21 U.S.C. § 881(a)(6). The burden of proof is on the United States to establish, by a preponderance of the evidence, that the property is subject to forfeiture. 18 U.S.C. § 983(c). For forfeiture cases where the United States' theory is that the property was involved in the commission of a criminal offense, the United States must establish that there was a "substantial connection" between the property and the offense. *Id.* Property is not subject to forfeiture if it would not have been received "but for" the occurrence of the illegal activities giving rise to the forfeiture. *See United States v. Farkas*, 474 F. App'x 349, 359–60 (4th Cir. 2012) (affirming

district court's use of the "but for" test to establish a connection between the crime and the proceeds).

## V. ANALYSIS

The United States contends that the defendant property, seized by CPD, constitutes proceeds of violations of 21 U.S.C. § 841(a)(1) and is subject to forfeiture pursuant to 21 U.S.C. § 881(a)(6). ECF No. 2, ¶ 2. For the reasons stated below, the undersigned recommends the entry of a default judgment.

First, no person has filed a verified claim, appeared, or answered the amended complaint. ECF No. 9, at 2. The time to file such a claim has expired. R. G(5)(a)(ii); ECF No. 9, at 2; ECF No. 6-1, at 2. The defendant property is in default and the clerk has entered default. ECF No. 8. Accordingly, the United States' well-pled allegations of fact are deemed admitted.

The amended complaint presents an account of the circumstances surrounding the United States' acquisition of the defendant property and how those same circumstances establish a substantial connection between the defendant property and violations of 21 U.S.C. § 841(a)(1). The amended complaint alleges that CPD officers found illicit drugs in every place they found Qaabid, namely, at his residence, his girlfriend's house, and in his car. ECF No. 2, ¶¶ 13, 15, 18–20. The indicia that Qaabid was in the illicit drug trafficking business, namely, cocaine base, cocaine, marijuana, cash, baking soda, guns, multiple phones, drug cutting agents, a sifter, and a digital scale, are overwhelming. *Id.*, ¶¶ 13, 15, 19. Moreover, Qaabid stipulated, in conjunction with his guilty pleas, that the defendant property constituted drug proceeds. *United States v. Qaabid*, 2:24cr68, ECF No. 31, at ¶ 8.

Accordingly, the facts are sufficiently detailed to support a reasonable belief that the government would be able to meet its burden of proof at trial. *See* R. G(2)(f); *One 2003 Mercedes*

*Benz CL500*, 2013 WL 5530325, at *2 n.4. The circumstances surrounding CPD's acquisition of the defendant property, as well as Qaabid's own admission, indicate that Qaabid was involved in the sale or distribution of narcotics, and this was the "but for" cause of the acquisition of the defendant property. The facts, therefore, support the reasonable belief that the defendant property has a substantial connection to and are proceeds of violations of 21 U.S.C. § 841(a)(1) and the United States is entitled to relief.

## VI. RECOMMENDATION

For the foregoing reasons, it is hereby recommended that:

1. the United States' motion for default judgment, ECF No. 9, be **GRANTED**;

2. judgment be entered in favor of the United States against the defendant property; and

3. an Order of Forfeiture be entered extinguishing any and all rights and interests that anyone may have in the defendant property and forfeiting the defendant property to the United States, pursuant to 21 U.S.C. § 881(a)(6).

## VII. REVIEW PROCEDURE

By copy of this report and recommendation, the parties are notified that pursuant to 28 U.S.C. § 636(b)(1)(C):

1. Any party may serve upon the other party and file with the Clerk written objections to the foregoing findings and recommendations within fourteen (14) days from the date this report is forwarded to the objecting party by Notice of Electronic Filing or mail, *see* 28 U.S.C. § 636(b)(1), computed pursuant to Rule 6(a) of the Federal Rules of Civil Procedure. Rule 6(d) of the Federal Rules of Civil Procedure permits an extra three (3) days, if service occurs by mail. A party may respond to any other party's objections within fourteen (14) days after being served with

a copy thereof. *See* Fed. R. Civ. P. 72(b)(2) (also computed pursuant to Rule 6(a) and (d) of the Federal Rules of Civil Procedure).

2. A district judge shall make a de novo determination of those portions of this report or specified findings or recommendations to which objection is made.

The parties are further notified that failure to file timely objections to the findings and recommendations set forth above will result in a waiver of appeal from a judgment of this Court based on such findings and recommendations. *Thomas v. Arn*, 474 U.S. 140 (1985); *Carr v. Hutto*, 737 F.2d 433 (4th Cir. 1984); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984)

The Clerk is **DIRECTED** to send copies of this order to the counsel of record.

/s/
Robert J. Krask
United States Magistrate Judge

Norfolk, Virginia
July 24, 2026